**COLWELL, Admr. v DWYER**

Ohio Appeals, 2nd Dist, Madison Co

No 149.   Decided Nov 25, 1940

H. H. Crabbe, London, and James F. Bell, Jr., London, for plaintiff-appellee.

James I. Boulger, Columbus; Robert F. Ebinger, Columbus, and Frank J. Murray, London, for defendant-appellant.

# 456

## OPINION

By GEIGER, J.

In the court below the plaintiff's amended petition makes the following allegations: That the plaintiff is the administrator of the estate of Lorna Colwell; that on or about the 19th day of September, 1938, decedent's husband, James Colwell, leased from the defendant a farm, together with the appurtenances including a well; that at the time the defendant leased the farm he well knew that said Colwell intended to use the water from said well for drinking purposes and general household use. At the time the lease was made and at the time the said James Colwell moved his family, including the decedent, to the farm, the well thereon contained colon bacilli and other poisonous impurities, the names of which are unknown to plaintiff, which fact was then well known to the defendant and unknown to the plaintiff and his decedent; that said defendant falsely and fraudulently concealed said fact from said plaintiff and his decedent and told the plaintiff that the well was a good well and thereby led the plaintiff to believe that the water was pure and wholesome. The decedent drank the water and as the direct result of drinking said water she became infected with colon bacilli, and as the direct result of said infection died on the 13th day of March, 1939, leaving surviving the parties named in the petition. By reason of such false and fraudulent concealment of the condition of the well and the resultant death of the plaintiff's decedent, the plaintiff has been damaged in the sum of $25,000.00 for which judgment is asked.

A number of motions were interposed to this petition and overruled. An answer was filed in which the defendant denies substantially all the allegations of the petition. The cause came on for trial and at the conclusion of the evidence in chief, and at the close of all the evidence, the defendant moved in the alternative that the court direct a verdict for the defendant and that if the motion was overruled that the

Court arrest the evidence and order final judgment for defendant. These motions were overruled and the case was submitted to the jury, who, after consideration, were discharged for the reason that they were unable to agree. Thereupon the defendant gave notice of appeal to this Court upon the question of law from the ruling and orders of the Common Pleas Court, wherein said court overruled the motion of the defendant-appellant for directed verdict and to arrest the case from the jury and entered judgment. The case was thereupon lodged in this court.

Thereafter, the plaintiff-appellee filed a motion to dismiss the appeal which motion consists of two branches —(1) No final order was entered in this cause in the Court of Common Pleas. (2) For the reason that plaintiff desires to amend the amended petition by inserting in said amended petition in the sixth paragraph thereof, after the word "colon bacilli" the following: "and other poisonous impurities the names of which are unknown to the plaintiff".

Referring to the amended petition, we find the allegation that the water "contained colon bacilli and other poisonous impurities, the names of which are unknown to the plaintiff". It would appear from this that at the time of the trial the answer contained the allegation which the plaintiff now asserts as a reason why the motion to dismiss the appeal should be overruled.

Taking up the first ground of the motion, to-wit, "No final order was entered in this cause in the Court of Common Pleas", we find many cases which in our judgment require the overruling of the motion on this branch.

We make comment upon a few and cite others.

In the case of **Swaney v Pa. R. R. Co., 23 Abs 212**, it is held in substance that where a trial court after overruling motions for directed verdict, accepts a verdict of disagreement, discharges the jury and continues the case, such action in substance and effect constitutes granting a new trial, and the overruling of the motion for directed

verdict constitutes a final order from which an appeal on questions of law may be prosecuted.

A motion to dismiss the appeal was overruled in the cases therein cited and to which we may further allude.

· In **Myers v Elyria Memorial Hospital Co., 30 Abs 674,** it is held in substance that irrespective of the finding or disagreement of the jury an order overruling a motion for a directed verdict is a final order from which an appeal may be taken to the reviewing court. Irrespective of the disagreement of the jury, §11601 GC empowers the trial court to pass upon a question of law and render judgment in favor of the party entitled thereto, when under the evidence received only a question of law is presented.

**Laub Baking Co. v Middleton, 118 Oh St 106,** syllabus 4 is to the effect that,

"The refusal of a trial court to direct a verdict for a defendant, and its dismissal of the cause without prejudice, determines that action and prevents a judgment in favor of defendant; this constitutes a final order within the purview of §12258 GC, and is reviewable on error."

Syllabus 5,

"While a motion for a new trial is necessary to determine the weight of the evidence, it is not necessary in the application, by the court, of the law to the facts on a motion for a directed verdict. **The defeated party has the right to rest solely on his motion for a directed verdict;** and, although he may do so, he is not compelled to ask for a new trial which he may not desire."

**Michigan-Ohio-Indiana Coal Assn. v Nigh, 131 Oh St 405** is to the effect that the overruling of a motion for a directed verdict is a final order. On pages 410-411, Jones, J., delivering the opinion of the Court says:

"* * * if defendant was in law entitled to a final judgment in its favor on his motion for a directed verdict, the trial court should have entered it; and if the trial court erred in that respect, either the appellate court or this court should do what the trial court should have done, to-wit. enter a final judgment in favor of the defendant."

To the same effect is the case of **Hubbuch, Appellee v City of Springfield, Appellant, 131 Oh St 413; Hocking Valley Mining Co. v Hunter, 120 Oh St 333.**

· **Murphy, Appellee v Pittsburgh Plate Glass Co., Appellant, 132 Oh St 68,** opinion by the Court,

"Where a trial court overrules a motion for a directed verdict, a verdict is returned for the party making such motion, and a motion for new trial is sustained by the trial court, the overruling of the motion for a directed verdict is a final order from which a review may be had."

In the case at bar, the motion for directed verdict was made after the plaintiff had introduced his testimony and rested and after all the evidence was introduced. The jury disagreed. The appeal is made from the ruling of the Court overruling the motions for directed verdict.

We are of the opinion that under the decision cited this is an order from which appeal may be taken to this court irrespective of the fact that the jury disagreed and consequently no judgment has been rendered upon a verdict, and the first branch of the motion to dismiss will be overruled.

As to the second branch, we are of the opinion that the petition contained the allegation which the plaintiff now wishes to be inserted, claiming that · the right to do so is established by the case of **Wagner, Appellee v Long, Appellant, 133 Oh St 41.**

This is rather an unusual case, holding. that where a court overrules the motion for new trial but grants a mo-

tion to amend the pleading, such latter finding is in fact the granting of a motion for new trial, and that there is no final entry from which an appeal may be taken.

The court, through Day, J., on pages 49-50 holds that the case is not in conflict with the cases we have already cited. We, therefore, feel that the second branch for the dismissal of the appeal should be overruled.

The case now comes on for consideration upon the error complained of by the defendant in the overruling of his motion.

The defendant, on page 19 of his brief, sets out his assignment of error, stating that the only assignment of error is the refusal of the trial judge to sustain either of the alternative motions in the Court below.

Counsel then states the proposition of law upon which he claims that the defendant-appellant was entitled to have its motion sustained by the trial court, and upon which final judgment should be rendered for him by this Court, and the defendant enumerates three reasons.

"1. A lessor is not liable for conditions of the premises dangerous to health which he could have discovered in the exercise of reasonable care, the tenant being in law required to exercise the same degree of care as the landlord to discover these dangerous conditions; consequently the landlord is not obliged to go beyond his knowledge and make such inspection as might have disclosed the danger."

It is claimed that plaintiff has failed to offer evidence tending to show that the defendant actually knew that the well on the premises contained colon bacilli that were dangerous to the life and health of plaintiff's decedent, and that there was no duty from him to the decedent because the plaintiff failed to produce a scintilla of evidence that the plaintiff had actual or even constructive knowledge of a danger which, it is alleged but not proved, caused her death.

"2. The evidence of plaintiff failed to present as a question for the jury whether the water contained any impurities harmful to life or health."

"3. The plaintiff below failed to introduce any evidence tending to show causal connection between any harmful impurity in the water from the well and the death of the decedent, the testimony merely disclosing at best, a possibility, rather than the legal essential of probability."

## THE LAW.

At this point it may be well to state the principle that must govern the trial court in passing upon a motion for a directed verdict.

Hamden Lodge v Ohio Fuel Co., 127 Oh St 469, syl. 4,

"Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue. after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him."

Metropolitan Life Ins. Co. v Huff, 128 Oh St 469,

"When at the close of the plaintiff's evidence reasonable minds can reach no conclusion except in favor of the defendant, it is error for the trial court to overrule the defendant's motion for a directed verdict."

J. C. Penney Co. v Robison, 128 Oh St 626, syl. 6,

"Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a

citizen his trial by jury when he has the right."

See also—**Mahoning Savings & Trust v Kellner, 131 Oh St 69.**

**Kuhn, Appellant v Banker, Appellee, 133 Oh St 304, syl. 2,**

"Even though there is evidence of malpractice sufficient for submission to the jury on that issue, a verdict must be directed in favor of the defendant where there is no evidence adduced which would give rise to a reasonable inference that the defendant's act of malpractice was the direct and proximate cause of the injury to the plaintiff."

The rules under which the testimony must be submitted will further appear from the following cases:

**Pence v Kettering, 128 Oh St 52,**

"If the circumstances disclosed by the uncontradicted evidence are such that reasonable minds might reach different conclusions as to inferences to be drawn therefrom and the ultimate facts established thereby. it is prejudicial error for the trial court to direct a verdict."

**Bevan, Appellant v N.Y.C. & St. L. Rd. Co., Appellee, 132 Oh St 245,**

Syl. 4—"Where at the close of the employee's case in chief all of the evidence produced amounts at the most to a surmise or suspicion of negligence on the part of the employer, the latter is entitled to a directed verdict upon motion therefor."

Syl. 6.—"Where upon all the evidence reasonable minds can come to but one conclusion, it is the duty of the court, if requested, to direct a verdict accordingly."

**Hubach, Appellant v Cole, Appellee, 133 Oh St 136,**

"In a malpractice action against a physician, involving a claim of negli-

gent treatment with injurious results, it is reversible error to arrest the evidence from the jury at the close of plaintiff's case in chief and render judgment for the defendant physician, where, viewing plaintiff's evidence in the light most favorable to her contention, she has presented a chain of circumstances and events from which an inference may reasonably arise that the physician was negligent and that such negligence was the proximate cause of an impaired physical condition."

**Durbin, Appellee v Humphrey, Appellant, 133 Oh St 367.**

"A motion by defendant for a directed verdict, made at the close of plaintiff's evidence, raises a question as to the legal sufficiency of the evidence adduced to go to the jury, and should be overruled if the evidence is such that reasonable minds may differ as to the inferences to be drawn therefrom."

Under the rules that we have outlined, it becomes necessary to examine the evidence adduced as to each of the three claimed errors upon the part of the defendant in the failure of the Court to direct a verdict.

Briefly, the defendant was the owner of a farm which had been formerly rented by other tenants, but which was under the contract alleged in the petition leased to the plaintiff. On that farm there was located a dwelling house and near the dwelling house a well. Near to the well, but on the downward slope from it toward the barn there was an outhouse. The former tenant had complained that the water was unfit for use and there is evidence tending to show that the women of the household then using the water made complaint of that fact to the owner, who is the defendant herein, but that he spoke lightly of the complaint of the women and proceeded to drink the water. The evidence discloses that over a considerable period of time farm-hands and laborers working upon a barn continually used

the water without complaint or without any sickness developing so far as the testimony is concerned, but that the tenants used water hauled from another farm in milk cans due to the condition of the water from this well.

The plaintiff and his wife entered into the occupancy of the dwelling as alleged in the petition, on the 7th day of February, 1939. Testimony is to the effect that all the members of the family used the water and that the decedent was taken ill shortly before the 13th day of March, 1939, the day upon which she died, after having been operated upon for appendicitis.

While the evidence is not impressive that the owner of the farm had any knowledge that the well was contaminated, or that any of such impurities, or that the defendant falsely or fraudulently concealed such fact from the plaintiff and his decedent, and that there was a false and fraudulent concealment of the condition of the well, which condition was known to the defendant, yet there is some evidence upon which reasonable ▬▬▬▬ minds might differ upon this point, and we, therefore, would not be justified in holding that there was no evidence upon this point which required the case to be submitted to the jury, and we, therefore, overrule the first ground asserted to sustain the assignment of error.

We do this in spite of the holding in **Sprinkle v Burney, 68 Oh St 328,** wherein it is held that,

"The relation of lessor **and** lessee arises out of contract, and, where there is neither express warranty nor deceit, the latter cannot maintain an action against the former on account of the condition of the premises hired."

The second and third ground must be treated together. (1) An assertion that the plaintiff failed to present as a question to the jury whether the water contained any impurities and that he failed to introduce evidence tending to show a causal connection between any harmful impurities and the death of the decedent, which necessitates a close examination of the testimony of the doctors.

This presents for our determination the question as to whether the court below was or was not in error in refusing to permit the introduction of the testimony of the doctor who performed the operation for appendicitis, and attended the patient prior to the operation and subsequently to the time of her death.

The court sustained the objection to this doctor's testimony on the ground that it was a privileged communication under §11494 GC.

In the case of **Ausdenmoore v Holzback, 89 Oh St 381,** the decision by the court, it is held,

"We hold that a communication by the patient to the physician may be not only by word of mouth but also by exhibiting the body or any part thereof to the physician for his opinion, examination or diagnosis, and that that sort of communication is quite as clearly within the statutes as a communication by word of mouth."

In the case of **Swetland v Miles, 101 Oh St 501,** the court holds that §11494 GC in reference to privileged communications made to an attorney, that the language is all comprehensive and unlimited as to such communication.

The decision by Wanamaker, J., is quite cogent in the support of the privileged communication made to an attorney, and, of course, it would be equally applicable to a communication made by a person by exposing her body to the examination by her physician. However, counsel for plaintiff urges strongly that due to the fact that the patient is now dead that the privilege may be waived by her personal representative, and that, therefore, the testimony was wrongfully excluded.

In support of this position he submits the case of **Ind. Com. v Warnke, 131 Oh St 141,** opinion by Day, J. In that case it is held,

"In an action by a widow to recover compensation under the Workmen's Compensation Act for the death of her husband resulting from injuries sustained by him in the course of the employment, the testimony of a physician who attended decedent in his illness resulting from such injuries, as to knowledge and information gained by such physician in his professional capacity, relating to decedent's physical condition, may be admitted in evidence where the widow waives the statutory physician-patient privilege."

It will be observed that this case is largely confined to the question as to the right of the widow who seeks compensation under the Workmen's Compensation Act, and much that is said by the Judge delivering the opinion is based upon the provisions of the Workmen's Compensation Act.

The conclusion of the majority of the Court sustaining the decision states that,

"We hold that in an action by a widow seeking to share in the State Insurance Fund by reason of the death of her husband, an employee, resulting from injuries sustained by him while acting in the course of his employment, the testimony of a physician who attended him in his illness, resulting from such injuries, as to knowledge and information gained by him in his professional capacity, relating to decedent's physical condition, may be admitted in evidence where the widow waives the statutory physician-patient privilege."

This case while of compelling authority in Workmen's Compensation cases, seems to us to fall far short of reversing the rule as laid down in the Swetland case. The present case has nothing to do with Workmen's Compensation, and only relates to an ordinary action for damages.

The Judge, writing the opinion has diligently enumerated cases outside of Ohio, where courts have held that statutes protecting privileged communications can be waived by the personal representative of the decedent.

Many of these cases present strong reasons for an amendment to the rule, but as pointed out by Mathias, J., and Zimmerman, J., that the Swetland v Miles case is still the law of Ohio.

Day, J., states, on page 149,

"By virtue of the case of **Swetland v Miles (1920), 101 Oh St 501,** 130 N. E. 22, Ohio is among the few jurisdictions denying the right to the representatives of a deceased client to waive the privilege, declaring the statutory enumeration of waivers to be exclusive."

The writer expressed his concurrence with the cases and text writers that he has cited, but his views are not concurred in by majority of the court, who have confined their opinion simply to Industrial Commission cases.

However we may feel about the correctness of the ruling of the court excluding the testimony of a physician on the ground that it was a privileged communication, yet for the purposes of considering this appeal we will give consideration to the excluded testimony which appears in the bill of exceptions.

We feel that while we are not obliged to do this, that under the rule that the testimony of the party against whom the motion is made must be given its most favorable consideration, that we are justified in this position. This being a case wherein it is claimed the death has occurred on account of poisonous material contained in the contaminated water, we must give exclusive consideration to the testimony of the experts.

The first expert witness of the plaintiff was J. C. Mooney, who testified as to securing the water from the well and submitting it to the State Laboratory for examination. He gave a description of the location of the well and of its construction, and of the position of the adjacent building, including the toilet. He admitted, on cross-examination that the bacilli, afterwards found in the sample which he secured, might

have come from the pump and not from the water in the well. He stated that upon receiving back the report from the State Laboratory he notified both the tenant and the owner of the farm that the water was contaminated and unsatisfactory. He went out to the farm to test whether or not there was seepage coming from the toilet to the well—using a methyl blue dye for test purposes. The dye did not disclose such seepage. He testified that colon baccilus is harmless in its proper place, which is the colon tract of man and animal, it being found in every human being. He states that if the State Laboratory finds bacilli coli it is considered that that is a signal that there is bacteria in the water and the water is unfit to drink. He testified further about the different bacilli, some being entirely harmless, that the test made by the State Laboratory often results in a condemnation of harmless wells. He testified that non-fecal bacilli is not harmful to human beings, and that when a test is run of water it cannot be told whether the colon bacilli is fecal or non-fecal, and that if it were non-fecal it would not harm anybody. He testified that unpleasant odor and taste, as testified by one of the former tenants has no sanitary significance, neither is there any health significance to be attached to worms that may be in the water.

The next medical witness was Leo F. Ey, in charge of the Laboratory of the Ohio Department of Health. He testified as to the submission of the sample to him and his examination in the State Laboratory. He testified that they found colon bacilli in the water, they being organisms found naturally in the intestinal tract of man or animal, or his sewage material. He testified as to the method of examination, stating that when that disclosed the presence of colon bacilli no further examination was made as to water coming from a single home and dug well. The discovery of the colon bacilli covers enough information to point out that there is pollution in the water. The Department is only interested in whether the water supply was receiving pollution. There are several types of colon bacilli but for the purposes of examination they are all placed in the same group. The presence of these germs indicates that the water is being contaminated and if found in a well that excrement from man or beast had gotten into the well. On cross-examination he stated that colon bacilli might be different types, one known as fecal and one as non-fecal. It is the fecal group that is found in the human bowel. He could not state that such a germ is harmless. The Department examines the water for colon bacilli, not that those organisms are going to do harm to anyone who drinks the water, but when such bacteria are found the examiner knows it is an indication of pollution, "and where these colon organisms come from we might at some time or other find typhoid and dysentery and then we have a real serious germ to deal with." Typhoid and dysentery are associated with colon bacilli. Complete examination cannot be made as to private wells. When colon bacilli is found the Department tells the user there is pollution in the water, "and if that is coming from an outhouse some time or other you may get typhoid from that water," that being the way an individual could get typhoid. "Would you say from your examination of this water whether this water contained typhoid?" A. "No." Q. "Or dysentery?" A. "No." From the examination he could not tell whether the water contained typhoid germs, dysentery or any other harmful germ. The purpose in showing that the water is unsatisfactory is merely to indicate a possibility of something dangerous being in the water. It is more or less of a danger signal. If bacteria are found the Department recommends that the water be boiled. He could not tell from experiment whether the water had any harmful ingredients. The presence of bacteria creates a suspicion, a potenial possibility of typhoid and dysentery. The Department is interested simply to know whether the water is contaminated—

whether it is suitable for drinking purposes beyond that whether there are organisms such as typhoid and dysentery. Those are the only organisms in which they are interested. A person may have colon bacilli from other sources than water as from milk, butter. cheese, bread, meat—most any common article of food may be contaminated . Q. "Did you find any bacteria in this water or any evidence of germs that would cause appendicitis?" A. "No"

Doctor Henry H. Schwartzel was the surgeon who performed the operation, and the witness, a part of whose testimony was excluded as a privileged communication, but all of which we consider in determining whether there should have been a directed verdict. He first saw the decedent on March 7, 1939 at the hospital, her family physician having reported that she had appendicitis. He made a diagnosis of appendicitis and afterwards operated the same night. At this point the objection was made and sustained to his further testimony as being a privileged communication, and testimony was thereupon given in the absence of the jury. He stated after the incision he found acute inflammation involving the small bowel, part of the cecum, including the appendix. He had taken a history of the case prior to the examination, giving its details. He was not able to determine the causative organism. Thereupon a hypothetical question was propounded purporting to be based upon testimony given by lay witnesses. The question was objected to for the reason that it involved facts not shown by the evidence. In answer to the hypothetical question as to whether he did have an opinion as to the cause of Mrs. Colwell's illness, or the condition which he found, he stated, "It would be my opinion, if those facts are true, the inflammation noted at the time of the operation was due to infection of the water named. The foregoing testimony as indicated was given in the absence of the jury. The jury then resumed the box and the hypothetical question was re-stated, objection being made that it stated facts

not shown by the evidence, which objection was overruled. The Doctor then answered in substance. **Assuming these things to be true he would be of the opinion that the illness would be due to some water-borne infection.** He was asked that if the same person should within four days die of appendicitis and regional ileitis, what would in his opinion be the cause of the death, to which the Doctor answered that would depend upon whether the ileitis was acute or not, and whether or not it was as much of a factor as compared with appendicitis. Acute ileitis refers to an inflammation of the small bowel accompanied by other symptoms. The Doctor stated that if he assumed in addition to the foregoing that the patient had acute ileitis, the relation between the ingestion of the contaminated water and the death would still depend upon whether or not the ileitis was a marked factor in the production of the illness as compared to the appendicitis, or whether it was simply a concurring and otherwise non-related cause of the irritation. If the water found contained colon bacilli, and on the other facts given in the hypothetical question, his opinion was that the patient's illness was **probably** due to water-borne infection. The hypothetical question was then repeated in another form including the statement— in the absence of any other form of contamination what is your opinion, if you have one, of the cause of the illness? To which he answered: "I said that I felt it was due to water-borne infection." The initial cause of inflammation of the bowel may not be the colon bacillus but something else. If the woman drank water in several places and ate different foods and drank milk and became ill from colon bacilli, he could not tell from an examination of the body from what source the colon bacilli came into her body. It would be a matter of trial to find some contaminated source, and he comments upon the same that the hypothetical question states that the water was the only source of contamination. He testified at length as to the swelling of

the body as indicated in the decedent, and the other two members of the family who were taken ill, giving other causes for such swelling than the colon bacilli.

The foregoing is a resume of the testimony of expert witnesses for the plaintiff.

At its conclusion defendant made his motion to instruct the jury to return a verdict and an alternative motion. The court overruled both motions. Thereupon, the defendant introduced his evidence of which we now examine only the testimony of the physician offered.

Doctor Wilgus Holman is a physician and surgeon residing in London and operating a laboratory for the usual run of clinical work. After qualification, counsel for defendant propounded to him the hypothetical question offered to the medical witnesses of the plaintiff, and with the inquiry—"What in your opinion, if you have one, would be the cause of such illness?" To which the physician replied—"I could not give you an opinion. It is not possible to give an opinion on that statement." On being asked to explain why it was impossible to give an opinion on the statement, he replied at length as appears on pages 106 and 107 of the record. During the course of his answer he stated, "I don't get a definite conception of what is referred to by the clause 'in the absence of any other form of contamination' whether the propounder of this question is referring to the contamination of the water supposed to be involved or contamination of the individual." Not knowing it could not be taken in to account in having an opinion or making a diagnosis. The Doctor's testimony indicates that no opinion could be given as to the cause of the sickness of the decedent from the matter stated in the hypothetical question, for the reason that many necessary elements were omitted, which he enumerated. On page 109, he re-states information that would be necessary to form the hypothetical question to be used as a basis of the opinion. He then testifies as to the death certificate and states that ap-

pendicitis is the recognized cause of the death but that he did not intend to convey the impression that regional ileitis is not a possible accepted cause of death, stating that the United States government in its blank for report of causes of death does not give ileitis as a cause of death. Upon being asked whether appendicitis came from drinking water or anything likely contained in that water, he answered, "No, it does not, with the simple reservation that it is impossible to say such a thing never happened. From a practical standpoint, no, appendicitis is not caused by drinking water." On cross-examination he goes into detail, arriving at the same conclusion in reference to drinking water not causing appendicitis. On being asked on cross-examination if he could think of any element that might be dissolved in water that might cause appendicitis, he enumerated typhoid germs, any pathogenic germ could cause it if it is not a germ that is a normal inhabitant of the bowel. In speaking of colon bacilli, he states that its presence or absence of further contamination, and he reiterates that upon the facts contained in the hypothetical question he could not form an opinion that the illness was caused by some water-borne infection.

Doctor Frank R. Neff, a doctor living in London, and the Health Commissioner of Madison County, was the next witness. He was asked the hypothetical question with the inquiry—"What in your opinion, if you have one, would cause such illness?" To which he answered—"I couldn't give an opinion because in my judgment further details and information would be necessary for any one to form an opinion, that is my belief." Being asked if in his opinion appendicitis is caused from drinking water which contains colon bacilli, he stated that he could not answer yes or no, but stated that he never personally knew of such effect.

It will thus appear that there is no testimony except the guarded and qualified statement of Doctor Schwartzel, in answer to the question whether he had an opinion as to the cause of

the illness—"It would be my opinion, if these facts are true, the inflammation present at the time of the operation was due to the infection of the water named," and he stated that his basis for this opinion would be the assumption of the truth of the matters stated in the hypothetical question.

Upon cross-examination, he stated as to his opinion of the cause of the illness, he said that he felt it was "due to water-borne infection". At another point he states that the illness may be caused by water-borne infection, but says she might have gotten colon bacilli from other sources than the water, especially emphasizing the statement contained in the hypothetical question, "In the absence of any other form of contamination". There is no evidence that shows a causal connection between the contaminated water and the appendicitis from which the plaintiff's decedent died.

The doctors have testified that appendicitis is not caused by drinking water, but assuming that it may so be caused, we are confronted with the statement of Williams, J., delivering the opinion in the case of **Kuhn v Banker, 133 Oh St 305, at page 312,**

"There are numerous reported cases in which it has been held that where there are two or more causes that might have produced the failure of the bones to unite, for only one of which the defendant is responsible, and there is no evidence to show to which cause the nonunion is attributable, a verdict must be directed for the defendant, * * *."

And the Judge cites the case of **Hubach v Cole, 133 Oh St 137,** where at page 140, Zimmerman, J., delivering the opinion of the court says,

"To sustain this point, defendant relies on the well-recognized rule that when the proof discloses that a given result may be due to two or more causes, for only one of which the defendant is liable, the matter enters the realm of guess and conjecture and should not be submitted to a jury."

Citing numerous cases, Zimmerman, J., points out, however, that there is another rule equally well established that upon motion for a directed verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. Construing the evidence most strongly in favor of the plaintiff, there is no evidence that the appendicitis from which the decedent died was caused by the colon bacilli in the water.

In addition, it is quite doubtful whether there is any evidence on the point that when the lady occupied the dwelling there was any colon bacilli in the water as the examination was taken more than thirty days after she began to drink the water.

There were numerous occasions upon which she may have been subjected to conditions which produced her appendicitis, and to say that because she had it and the water disclosed colon bacilli, that her appendicitis was caused by such germs, would be entering the realm of guess and conjecture and such matters should not be submitted to the jury.

The refusal of the court to grant the motion for directed verdict at the end of the plaintiff's testimony was prejudicial error.

Judgment reversed.

Coming now to enter the judgment that should have been entered by the court below, we direct that the motion to dismiss be sustained.

HORNBECK, PJ., BARNES, J., concur.